UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
KX TECH LLC                   :       Civ. No. 3:16CV00745(CSH)
                              :
v.                            :
                              :
DILMEN LLC, et al.            :       June 28, 2017
                              :
------------------------------x
```

## REPORT AND RECOMMENDATION

Plaintiff KX Tech LLC ("plaintiff") brought this action alleging patent infringement pursuant to 35 U.S.C. §1, et seq. and the Connecticut Unfair Trade Practices Act ("CUTPA") against defendants Dilmen LLC and Huseyin Dilmen (hereinafter collectively referred to as the "defendants"). [Doc. #1]. On February 15, 2017, Judge Charles S. Haight granted plaintiff's unopposed motion for default judgment, and referred this matter to the undersigned for purposes of conducting an inquest as to the appropriate amount of damages, costs and attorney's fees to be awarded, if any. See Doc. #34 at 9-10. A formal referral for this purpose was entered on February 15, 2017. [Doc. #35]. For the reasons set forth below, the Court recommends that **$36,200.02** be awarded to plaintiff as reasonable attorney's fees and costs.

## I.   **Procedural Background**[1]

Plaintiff commenced this action against defendants on May 17, 2016, alleging infringement of four of plaintiff's patents. See generally Doc. #1, Complaint. Defendants were served on June 26, 2016. [Doc. ##8, 9]. Defendants filed an Answer to the Complaint on August 18, 2016. [Doc. #20]. On November 2, 2016, counsel for defendants filed a motion to withdraw as attorneys of record because defendants terminated defense counsel's representation and instructed counsel to withdraw their appearances. See Doc. #23 at 1. On November 10, 2016, Judge Haight entered an electronic order regarding the motion to withdraw, stating in pertinent part that:

> Defendant Dilmen, LLC is advised to obtain counsel and have them enter an appearance on or before **November 23, 2016** and Huseyin Dilmen is advised to either obtain counsel and have them enter an appearance on or before **November 23, 2016** or enter a pro se appearance by that date. If Defendants do not do so, then a default judgment may be entered against Defendants once the motion to withdraw is granted by this Court.

Doc. #24 (emphases in original). Defendants failed to comply with Judge Haight's November 10, 2016, Order. As a result, Judge Haight granted the motion to withdraw and cautioned: "Defendants are now left without an appearance entered in this matter and

---

[1] The Court presumes familiarity with the general factual background of this matter, which is set forth in Judge Haight's Ruling on Plaintiff's Motion for Default Judgment. See Doc. #34 at 5-7.

are at risk of default judgment should Plaintiff so move this
Court." Doc. #25.

On December 14, 2016, plaintiff filed a Motion for Default
Entry 55(a) and Motion for Default Judgment against defendants.
[Doc. #26]. On December 15, 2016, Judge Haight granted
plaintiff's Motion for Default Entry 55(a), and denied, without
prejudice, plaintiff's Motion for Default Judgment. [Doc. #28].
On January 11, 2017, plaintiff re-filed its Motion for Default
Judgment [Doc. #29], which Judge Haight granted as to liability
on February 15, 2017. [Doc. #34]. Judge Haight also enjoined
defendants "from making, using, offering for sale or selling any
and all goods which infringe on Plaintiff's asserted United
States patents[.]" Id. at 9. Judge Haight referred plaintiff's
request for damages, costs and attorney's fees to the
undersigned for an inquest as to the appropriate amount, if any,
to be awarded. See id.; see also Doc. #35. Default judgment as
to liability on all of plaintiff's claims was entered against
defendants on February 16, 2017. [Doc. #37].

On February 23, 2017, the undersigned held a telephonic
conference with counsel for plaintiff to discuss Judge Haight's
referral and the scheduling of an evidentiary hearing. [Doc.
##38, 39]. During this call, the Court directed counsel for
plaintiff to file a supplemental memorandum in support of
plaintiff's request for damages. See Doc. #40. On March 22,

3

2017, plaintiff filed a Motion for Hearing on Damages, Costs and
Attorney's Fees. [Doc. #42]. On this same date, the Court
granted plaintiff's motion and scheduled an evidentiary hearing
for April 20, 2017. [Doc. ##43, 44].

On March 22, 2017, the Court also entered an Order
requiring plaintiff to file a pre-hearing memorandum of law.
[Doc. #45]. The Court ordered plaintiff to cause a copy of the
Order to be served on defendants by April 13, 2017, and for
plaintiff to file a proof of service. See id. at 3.

Plaintiff timely filed its pre-hearing memorandum of law on
April 10, 2017. [Doc. #46]. In its memorandum, plaintiff
represented that it elected not to pursue damages, and instead
would seek only an award of costs and attorney's fees pursuant
to 35 U.S.C. sections 284 and 285. See id. at 3-4. In light of
this representation, and plaintiff's assertion that it intended
to solely rely on affidavits and documentary evidence to support
its claim for fees and costs, see id. at 2, on April 12, 2017,
the Court issued an Order canceling the April 20, 2017,
evidentiary hearing. See Doc. #47. The Court provided defendants
until April 28, 2017, to object to the costs and fees sought.
See id. The Court also ordered plaintiff to mail a copy of this
Order to defendants at their last known address. See id.

Defendants have filed no objection to plaintiff's request for costs and fees.[2]

## II. Discussion

"When the Court enters a default judgment, it must accept as true all of the factual allegations of the complaint, but the amount of damages are not deemed true." Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (internal citation and quotation marks omitted). Accordingly, "[t]he district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). Such an inquest "involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under [Rule 55]." Id.

"Because the default order entered in this case establishes [defendants'] liability, the only remaining issue is whether [plaintiff] has supplied adequate support for the relief it seeks." Keystone Glob. LLC v. Auto Essentials, Inc., No.

---

[2] Plaintiff attempted to serve the defaulted defendants with a copy of plaintiff's Memorandum of Law and the Court's March 22, 2017, and April 12, 2017, Orders, but the package was returned to plaintiff as undeliverable. See Doc. #49. Plaintiff's counsel represents that "Defendants have left this country under deportation orders, and have not provided any contact information either to Plaintiff or the Court[.]" Id. at 2.

12CV9077(DLC), 2015 WL 224359, at *3 (S.D.N.Y. Jan. 16, 2015)
(internal citations omitted) (collecting cases). "By its terms,
[Rule] 55(b)(2) leaves the decision of whether a hearing is
necessary to the discretion of the district court." Fustok v.
ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). A
hearing is not necessary as long as the Court "ensure[s] that
there was a basis for the damages specified in a default
judgment." Id. When a hearing is not deemed necessary, it is
appropriate for the Court to rely "upon detailed affidavits and
documentary evidence[.]" Id.; accord Keystone, 2015 WL 224359,
at *3 ("The Second Circuit has held that a damages inquest may
be held on the basis of documentary evidence alone as long as
the court has ensured that there was a basis for the damages
specified in the default judgment." (citing Fustok, 873 F.2d at
40 (internal quotation marks omitted))); IPVX Patent Holdings,
Inc. v. Taridium, LLC, No. 12CV5251(KAM)(SMG), 2014 WL 4437294,
at *2 (E.D.N.Y. Aug. 6, 2014) ("A court may make this
determination based upon evidence presented at a hearing or upon
a review of detailed affidavits and documentary evidence."
(collecting cases)), report and recommendation adopted, 2014 WL
4437307 (Sept. 9, 2014); Cadlerock Joint Venture, L.P. v. Prado,
No. 07CV1207(JS)(WDW), 2008 WL 4561611, at *2 (E.D.N.Y. Oct. 7,
2008) ("The amount of damages can be determined without a
hearing as long as the court satisfies itself, through review of

documentary evidence or affidavits, that the amount is reasonable." (citing <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 111 (2d Cir. 1997))).

Here, plaintiff has provided two declarations and other documentary evidence supporting its claims for infringement, an award of attorney's fees and costs, and additional details concerning defendants' post-judgment activities. <u>See generally</u> Doc. ##46-2, 46-3. Defendants have not submitted any opposition to the materials provided by plaintiff. Because plaintiff's declarations and documentary submissions provide a basis for an award of the fees and costs sought, no hearing is required. <u>See</u> <u>IPVX Patent Holdings</u>, 2014 WL 4437294, at *2-3.

**A. Exceptional Case**

Plaintiff contends that this case should be deemed "exceptional" in light of "Defendants' conduct, and Defendants' continuing actions to evade detection and enforcement[.]" Doc. #46 at 7. In support of this position, plaintiff specifically relies on: (1) defendants' failure to defend the case; (2) defendants' willful refusal to respond to plaintiff's discovery requests, leaving plaintiff with no basis upon which to support a request for damages; (3) defendants' disregard of two cease and desist letters; and (4) defendants' continued sales of the infringing products under a different name in an attempt to evade plaintiff's cease and desist demand. <u>See</u> <u>id.</u> at 7-8.

### 1. *Applicable Law*

"Section 285 of the Patent Act authorizes a district court to award attorney's fees in patent litigation. It provides, in its entirety, that '[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party.'" Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1752 (2014) (quoting 35 U.S.C. §285). Construing section 285, the Supreme Court held

> that an "exceptional" case is simply one that stands out
> from others with respect to the substantive strength of
> a party's litigating position (considering both the
> governing law and the facts of the case) or the
> unreasonable manner in which the case was litigated.
> District courts may determine whether a case is
> "exceptional" in the case-by-case exercise of their
> discretion, considering the totality of the
> circumstances.

Id. at 1756 (footnote omitted). In making such a determination, "there is no precise rule or formula" to be followed; rather, the Court should use its "equitable discretion" in light of the above considerations. See id. (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994)); see also id. at n.6 (In making this determination, district courts may "consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" (citation omitted)).

"Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden[.] Indeed, patent-infringement litigation has always been governed by a preponderance of the evidence standard[.]" Id. at 1758 (citing Bene v. Jeantet, 129 U.S. 683, 688 (1889)). In determining whether plaintiff has established that this matter is "exceptional," for purposes of an award of attorney's fees pursuant to 35 U.S.C. §285, the Court thus applies a preponderance of the evidence standard.

### *2. Findings of Fact*[3]

Judge Haight's Ruling on Motion for Default Judgment establishes that defendants infringed plaintiff's patents, and are liable for such infringement. See generally Doc. #34 at 5-7; see also id. at 7 ("Plaintiff has established its claims of patent infringement, and is entitled to default judgment on each of those claims."). Accordingly, here, the Court focuses its attention on whether the circumstances of this case are "exceptional," so as to support an award of attorney's fees pursuant to 35 U.S.C. §285.

---

[3] The Court's findings of fact are based on the allegations of the Complaint regarding liability and the admissible evidence regarding attorney's fees and costs contained in plaintiff's submissions. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); see also Keystone, 2015 WL 224359 at *3.

Plaintiff is the assignee and rightful owner of two United States Patents, Nos. 8,673,146 and 8,137,551, issued on March 18, 2014, and March 20, 2012, respectively. See Doc. #1, Complaint at ¶15; see also Doc. #1-7, #1-8, Complaint at Exs. F, G. These patents relate to the filter housing assembly for water filters installed in refrigerators by the manufacturer (hereinafter referred to as the "Push-Push Technology Patents"). See Doc. #1, Complaint at ¶¶16-19; see also Doc. #1-9, Complaint at Ex. H. On December 9, 2015, plaintiff notified defendants via a cease and desist letter that defendants -- through the sale of filter cartridges sold by Coral Premium Water Filters and Mirage Basics -- were offering for sale and/or selling water filters that infringed plaintiff's Push-Push Technology Patents. See Doc. #46-2, April 7, 2017, Pegnataro Declaration (hereinafter "Pegnataro Decl.") at Ex. 2; see also Doc. #1, Complaint at ¶¶20, 27, 39; Doc. #1-9, Complaint at Ex. H. An agent for defendants, "Dilmen," signed a United Sates Postal Service Return Receipt for the December 9, 2015, cease and desist letter. See Doc. #46-2, Pegnataro Decl. at Ex. 2; see also Doc. #1-9, Complaint at Ex. H.[4]

---

[4] In the 26(f) Report, the parties set forth, in pertinent part, the following "Statement of Undisputed Facts": (1) "Defendant Dilmen LLC d/b/a Coral Premium Water Filters performs business under the umbrella entity of Performancesupplies (at Amazon.com)[;]" (2) "Defendant Huseyin Dilmen is the sole operator and owner of Dilmen LLC d/b/a Coral Premium Water

Plaintiff is also the assignee and rightful owner of four additional patents, Nos. D656,578, D656,579, D656,580, and 9,061,225, the first three of which were issued on March 27, 2012, and the last on June 23, 2015. See Doc. #1, Complaint at ¶21; see also Doc. #1-10, #1-11, #1-12, #1-13, Complaint at Exs. I, J, K, L. These patents relate to cassette filer cartridges installed in refrigerators by the manufacturer (hereinafter referred to as the "Cassette Filer Technology Patents"). See Doc. #1, Complaint at ¶¶22-23; see also Doc. #1-14, Complaint at Ex. M. On November 11, 2015, plaintiff notified defendants via a cease and desist letter that defendants -- through the sale of cassette filters sold by Coral Premium Water Filters and Mirage Basics -- were offering for sale and/or then selling water filters that infringed plaintiff's Cassette Filter Technology Patents. See Doc. #46-2, Pegnataro Decl. at Ex. 1; see also Doc. #1, Complaint at ¶¶24, 50, 59; Doc. #1-14, Complaint at Ex. M. An agent for defendants, "Dilmen," signed a United Sates Postal Service Return Receipt for the November 11, 2015, cease and

---

Filters[;]" (3) "Defendant Huseyin Dilmen is the sole owner of the United States Trademark Registration No. 4,798,472 for selling product in interstate commerce under the mark CORAL PREMIUM WATER FILTERS, including water filters for refrigerators[;]" and (4) "Defendant Huseyin Dilmen is the sole owner of the United States Trademark Application Serial No. 86/613,293 for selling water filters in interstate commerce under the mark MIRAGE BASICS." Doc. #21 at 5.

desist letter. See Doc. #46-2, Pegnataro Decl. at Ex. 1; see also Doc. #1-14, Complaint at Ex. M.

On February 16, 2016, plaintiff's Attorney Robert Curcio emailed defendant Dilmen and demanded that defendants remove the "infringing Coral filters" from sale on Amazon.com. Doc. #46-2, Pegnataro Decl. at Ex. 3; see also Doc. #1, Complaint at ¶25; Doc. #1-15, Complaint at Ex. N.

After receiving the November 15, 2015, December 9, 2015, and February 16, 2016, notices, defendants began offering for sale and/or selling the infringing products under a different label, in an attempt to conceal their ongoing infringing activities. See Doc. #46-2, Pegnataro Decl. at ¶7; see also id. at Ex. 4; Doc. #1, Complaint at ¶70; Doc. #34 at 7 (Ruling on Motion for Default Judgment: "Accepting Plaintiff's allegations as true and having reviewed the present record before the Court, Defendants began offering for sale and/or selling the infringing products under a different label in an attempt to again evade and undermine Plaintiff's intellectual property rights.").

Plaintiff filed its Complaint on May 17, 2016. [Doc. #1]. Counsel for defendants filed notices of appearance in July and August, 2016. See Doc. ##11, 18, 19. An answer to the Complaint was filed on August 18, 2016. [Doc. #20]. The parties filed their Rule 26(f) Report on September 28, 2016, in which they anticipated discovery would be needed on, inter alia, "whether

and to what extent [plaintiff] has suffered damages, loss of profits, or other alleged compensable injuries." Doc. #21 at 6. About a month later, on November 2, 2016, counsel for defendants filed a motion to withdraw their appearances, asserting that defendants had "informed [counsel] that they are terminating the attorney-client relationship and have instructed [counsel] to withdraw from further representation in this matter." Doc. #23 at 1. On November 10, 2016, Judge Haight entered an order stating that the motion to withdraw would be granted on November 23, 2016, for good cause shown. See Doc. #24. In this same Order, Judge Haight required that by November 23, 2016, defendants obtain counsel and have counsel enter an appearance, or alternatively for defendant Dilmen, that he enter a pro se appearance. See Doc. #24. Judge Haight cautioned defendants that failure to enter such appearances could result in the entry of a default judgment in plaintiff's favor once the motion to withdraw was granted. See id. On November 23, 2016, Judge Haight granted the motion to withdraw and again cautioned: "Defendants are now left without an appearance entered in this matter and are at risk of default judgment should Plaintiff so move this Court." Doc. #25.[5]

---

[5] The Court infers from the docket that because defendants fired their counsel shortly after the 26(f) Report was filed, and where defendants failed to thereafter appear, plaintiff was not provided an opportunity to conduct meaningful discovery. See

Plaintiff filed a motion for default and motion for default judgment on December 14, 2016. [Doc. #26]. Judge Haight granted the motion for default, but declined to enter default judgment in light of the two-step process required by Federal Rule of Civil Procedure 55. See Doc. #28 (quoting City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011)). Judge Haight's Order further provided: "If no motion to set aside this entry of default is filed by January 6, 2017, then Plaintiff may renew its Motion for Default Judgment and Motion for Attorneys Fees ... on or before January 16, 2016[.]" Id. (sic) (emphasis removed). Pursuant to this Order, plaintiff filed a renewed motion for default judgment on January 11, 2017. See Doc. #29. Judge Haight deferred consideration of the renewed motion until defendants were provided with adequate notice of the default. See Doc. #30.[6]

_____

Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)[.]"). Plaintiff's attorneys' billing records suggest that defendants made "inadequate" initial disclosures. See Doc. #46-3, April 7, 2017, Declaration of Sheila Panza in Support of Plaintiff's Memorandum of Law Regarding Costs and Attorney's Fees ("Panza Decl.") at Ex. 1, Time and Expense Details report ("Legal research regarding lack of initial disclosure from defendant.").

[6] On January 30, 2017, the Court received a letter motion from defendants requesting that this matter be "postponed" as defendant Dilmen "was ordered to be deported on 11/17/16 by immigration judge, therefore I am not in USA and I do not have an attorney[.]" Doc. #32. Judge Haight denied this "purported letter motion" on several grounds. See Doc. #33.

On February 15, 2017, Judge Haight granted plaintiff's unopposed motion for default judgment. [Doc. #34]. In addition to finding defendants liable on all counts of plaintiff's Complaint, Judge Haight also found that a "permanent injunction is warranted[,]" and permanently enjoined defendants "from infringing on the Push Technology Patents and the Cassette Technology Patents held and assigned to Plaintiff[.]" Doc. #34 at 8. Judge Haight further stated:

> **[G]iven that Defendants continue to advertise and seek to sell these products on the internet,** the Court will grant Plaintiff, as set forth below, the additional relief sought regarding the destruction of infringing products and an order to cease advertising them. Defendants must vacate or otherwise destroy the infringing products, advertisements, catalogs, brochures and to alter all internet sites promoting the infringing goods to remove [any] and all references to the infringing products.

Id. at 8-9 (alteration and emphasis added); see also id. at 9-10. Despite this explicit order, defendants have continued to offer for sale and/or sell the infringing products. See Doc. #46-2, Pegnataro Decl. at ¶¶8-9; see also id. at Ex. 5.

### 3. *Conclusions of Law*

After considering the totality of the circumstances, the Court finds that this case is "exceptional," and an award of attorney's fees is proper.[7] The combination of (1) defendants'

---

[7] In light of the default judgment of liability entered against defendant, plaintiff is the "prevailing party" for purposes of 35 U.S.C. §285. See, e.g., Shariff v. Alsaydi, No.

litigation misconduct, (2) the strength of plaintiff's litigation position, (3) the willful infringement of plaintiff's patents, (4) the disregard of Judge Haight's permanent injunction, and (5) the need for deterrence, supports this conclusion.

First, defendants frustrated the litigation process by failing to participate in the defense of this matter. Rather than defend this action, defendants instead chose to terminate their attorneys shortly after the filing of the answer and Rule 26(f) Report. See Doc. ##20, 21, 23. As a result, plaintiff was unable to obtain meaningful discovery, including discovery related to its potential damages. See Doc. #21 at 6. Therefore, although liability has been established, plaintiff has been left "with no basis for predicting (and therefore, requesting) damages under either a lost profits theory or a reasonably royalty theory." Doc. #46 at 8 (sic). The timing of defendants' termination of counsel's representation, and defendants' subsequent failure to participate in the defense of this matter, appear to be deliberate attempts to frustrate the litigation process. Cf. Sprint Commc'ns Co. L.P. v. Chong, No.

---

11CV6377(FB)(SMG), 2013 WL 4432218, at *4 (E.D.N.Y. Aug. 15, 2013) ("Having obtained a default judgment against defendants, plaintiff is a prevailing party eligible to recover attorney's fees and costs." (citation omitted)).

13CV3846(RA), 2014 WL 6611484, at *5 (S.D.N.Y. Nov. 21, 2014) (awarding attorney's fees in Lanham Act case deemed exceptional where party, among other factors, "frustrated the litigation process by failing to participate, ... obstructed the plaintiffs and caused unnecessary delay").

Second, the strength of plaintiff's litigation position may be inferred from defendants' default, as "an innocent party would presumably have made an effort to defend itself." Chloe v. Zarafshan, No. 1:06CV3140(RJH)(MHD), 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) (collecting cases). This too supports an "exceptional" case finding.

Third, defendants have continued to offer the infringing products for sale after receiving notice of the infringement. See generally Doc. #46-2, Pegnataro Decl. at Exs. 1, 2, 3. Further, after receiving such notice, defendants began offering for sale and/or selling the infringing products under a different label, in an attempt to evade and undermine plaintiff's intellectual property rights. See Doc. #46-2, Pegnataro Decl. at ¶7; see also id. at Ex. 4; Doc. #1, Complaint at ¶70; Doc. #34 at 7. This willful infringement of plaintiff's patents also supports a finding that this case is "exceptional." Indeed, plaintiff's allegations of defendants' willful infringement are deemed admitted by virtue of defendants' default. See Doc. #1, Complaint at ¶¶35, 46; Cf. Malletier v.

_Carducci Leather Fashions, Inc._, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("Here, by virtue of its default, [defendant] has admitted [plaintiff's] allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to [plaintiff's] rights." (citation omitted) (alterations added)). An inference of willfulness may be drawn from defendants' default. Cf. _Fallaci v. New Gazette Literary Corp._, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) ("[W]e draw a further inference of willfulness from the defendant's failure to appear and defend this action, especially in light of plaintiff's allegation of willfulness[.]"). Accordingly, this combined with the other factors considered herein weighs in favor of an award of attorney's fees under 35 U.S.C. §285. See, e.g., _Keystone_, 2015 WL 224359, at *7 (awarding reasonable attorney's fees in patent infringement action where defendants willfully infringed plaintiff's patents).

Fourth, even after Judge Haight permanently enjoined defendants from "offering for sale or selling any and all goods which infringe Plaintiff's asserted United States patents[,]" see Doc. #34 at 9-10, defendants continued to offer the infringing products for sale, thereby flouting the Orders of the District Court. See Doc. #46-2, Pegnataro Decl., at ¶¶8-9; id.

at Ex. 5.[8] This too supports a finding that this case is "exceptional."

Finally, the Court considers the particular circumstances here and the need "to advance considerations of compensation and deterrence." Octane Fitness, 134 S. Ct. at 1756 n.6 (citation omitted). Given defendants' refusal to acknowledge plaintiff's several cease and desist letters, and their apparent violation of Judge Haight's permanent injunction, an award of attorney's fees in this case may serve to deter any further infringement of plaintiff's patents. See, e.g., Gust, Inc. v. AlphaCap Ventures, LLC, No. 15CV6192(DLC), 2016 WL 7165983, at *9 (S.D.N.Y. Dec. 8, 2016) (finding "'deterrence prong' of the Octane Fitness test also weigh[ed] in favor of an exceptional case finding"). Section 285 is remedial and its aim "is to compensate a [party] for attorneys' fees it should not have been forced to incur."

---

[8] Plaintiff offers screenshots of Amazon.com dated March 29, 2017, to "demonstrate the infringing cartridges are still being offered for sale under the Coral Filter label by defendant Coral Premium Water Filters after the order for Default Judgment." Doc. #46-2, Pegnataro Decl. at ¶9; see also id. at Ex. 5. While this exhibit is "hardly sufficient [itself] to establish infringement (which, however, has already been established by the allegations of the Complaint and defendant's default), these screenshots do show that [defendants] had been offering for sale" the products Judge Haight enjoined defendants from selling on February 15, 2017. IPVX Patent Holdings, 2014 WL 4437294, at *3.

_Kilopass Tech., Inc. v. Sidense Corp._, 738 F.3d 1302, 1313 (Fed. Cir. 2013).

Accordingly, the Court recommends that this case be classified as "exceptional" pursuant to 35 U.S.C. §285, and that plaintiff be awarded its reasonable attorney's fees. Cf. _Cognex Corp. v. Microscan Sys., Inc.,_ No. 13CV2027(JSR), 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014) (applying _Octane Fitness_ standard to award attorney's fees to plaintiffs in patent infringement case where the jury found willful infringement and where defendant had "engaged in unreasonable litigation tactics that ... wasted the Court's time and ... required plaintiffs to expend significant resources").

**B. Reasonable Attorney's Fees**

Plaintiff's memorandum seeks $34,712.50 in attorney's fees. See Doc. #46 at 9. The declaration submitted in support of the fees sought and the supporting documentation, however, seek a total of $38,562.50. See Doc. #46-3, Panza Decl. at ¶6; see also id. at Ex. 1, Time and Expense Details report. For purposes of below, the Court assumes plaintiff seeks an award for the higher amount.

"The district court retains discretion to determine what constitutes a reasonable fee." _Millea v. Metro-N. R. Co.,_ 658 F.3d 154, 166 (2d Cir. 2011) (citation and internal quotation marks omitted). However, such "discretion is not unfettered,"

and "the district court must abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court." Id. Both of these courts "have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" Id. (collecting cases). "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citation and internal quotation marks omitted)). To determine the presumptively reasonable fee a district court must engage in the following four-step process: "(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award." Parris v. Pappas, 844 F. Supp. 2d 262, 266 (D. Conn. 2012) (citation and internal quotations marks omitted).

### 1. *Reasonable Hourly Rate*

The Court first turns to the hourly rate sought, here: $350-$400 for Attorney Robert Curcio[9]; $400 for Attorney Peter W.

---

[9] The Time and Expense Details report reflects that Attorney Curcio billed at the rate of $350 per hour in 2015 and between

Peterson; $275 for Attorney David Pegnataro; and $225 for Patent

Agent Thomas Ciesco. <u>See</u> Doc. #46-3, Panza Dec. at ¶5. In

determining the reasonableness of the hourly rate sought, the

Court is guided by the following principles:

> The court must determine the reasonable hourly rate by
> reference to the prevailing market rates in the relevant
> community, for similar services by lawyers of reasonably
> comparable skill, experience, and reputation. The
> relevant community is the district in which the case is
> litigated. The burden rests with the prevailing party to
> justify the reasonableness of the requested rate. The
> attorney should establish his hourly rate with
> satisfactory evidence — in addition to the attorney's
> own affidavits. The court may also rely on judicial
> notice of the rates awarded in prior cases and the
> court's own familiarity with the rates prevailing in the
> district. The specific rate that is reasonable for a
> given attorney depends on such factors as the attorney's
> experience and expertise, the novelty and complexity of
> the issues presented, and the overall success achieved
> in the case.

<u>Hugee v. Kimso Apartments, LLC</u>, 852 F. Supp. 2d 281, 298

(E.D.N.Y. 2012) (internal citations and quotation marks

omitted). Generally, when assessing whether the hourly rates

sought are reasonable, the Court first reviews the billing

party's background and experience. <u>See</u> <u>Wise v. Kelly</u>, 620 F.

Supp. 2d 435, 443 (S.D.N.Y. 2008) (citations omitted).

Here, plaintiff has failed to meet its burden of

establishing the reasonableness of the requested hourly rates.

The record before the Court is devoid of information by which to

---

$375 and $400 per hour in 2017. <u>See</u> Doc. #46-3, Panza Decl. at
Ex. 1, Time and Expense Details report.

assess the reasonableness of the rates requested for any of the three identified attorneys, or the patent clerk. The declarations submitted in support of plaintiff's request for attorney's fees provide no information about any of the attorneys' legal education, professional experience, number of years of practice, or any other facts that would permit an informed assessment of the reasonableness of the hourly rates sought. The declarations similarly lack any telling information as to the patent clerk's background. Further, although the Court assumes from the hourly rates sought that Attorneys Curcio and Peterson are partners, and Attorney Pegnataro an associate, even this basic information is not provided.

Nevertheless, the Court takes judicial notice of the billing rates customarily awarded in this District. See Farbotko v. Clinton Cty. of N.Y., 433 F.3d 204, 209 (2d Cir. 2005) (Courts may take "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." (collecting cases)); Wise, 620 F. Supp. 2d at 442 ("In deciding what reasonable rates are in the community, the court may rely upon its own knowledge of private firm hourly rates, and may take judicial notice of a law firm's reputation for high quality work." (internal citations and quotation marks omitted)). In September 2015, Judge Arterton awarded, absent objection, hourly rates between $300 and $425 for experienced

partners litigating an intellectual property matter in this
District. See Romag Fasteners, Inc. v. Fossil, Inc., No.
3:10CV1827(JBA), 2016 WL 1192648, at *2 (D. Conn. Mar. 28,
2016); see also Sony Elecs., Inc. v. Soundview Techs., Inc., 389
F. Supp. 2d 443, 448 (D. Conn. 2005) (awarding hourly rate of
$400 to "a litigation partner with substantial experience in the
litigation of patent and antitrust issues"). Although it is
unclear whether Attorney Pegnataro is an associate, Courts in
this district have recently awarded between $225 and $275 per
hour for experienced associates. See, e.g., Bridgeport & Port
Jefferson Steamboat Co. v. Bridgeport Port Auth., No.
3:03CV599(CFD), 2011 WL 721582, at *6 (D. Conn. Feb. 22, 2011);
Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc., No.
3:10CV60(JBA), 2012 WL 4092515, at *2 (D. Conn. Sept. 17, 2012)
(awarding $225 per hour to second year patent associate);
Crawford v. City of New London, No. 3:11CV1371(JBA), 2015 WL
1125491, at *3 (D. Conn. Mar. 12, 2015) (awarding $250 per hour
to associate who had been practicing law for eight years and
noting this rate "appears to be in line with the rates charged
by other associates with his level of experience"). Although the
rates billed by Attorneys Curcio, Petersen and Pegnataro appear
commensurate with those customarily billed in Connecticut, this
is not enough to support a finding that the full hourly rates
sought are reasonable, as "[a]n attorney who seeks payment from

24

his client's adversary must make some factual showing that he is worthy of the rates he charges." Kahn v. Gen. Motors Corp., No. 88CV2982(PNL), 1992 WL 208286, at *3 (S.D.N.Y. Aug. 14, 1992). Accordingly, because plaintiff provided no information concerning the background and experience of any attorney that might explain the differing hourly rates at which their services were billed, or which might provide the Court a means by which to assess whether the billed hourly rates are reasonable, the Court recommends a reduction of ten percent (10%) from the total amount claimed for billed attorney time. See id. (deducting 20% from total amount claimed where there was no evidence of record justifying reasonableness of hourly rate sought); see also Nat'l Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG, No. 04CV2983(DLC)(KNF), 2006 WL 5804603, at *6 (S.D.N.Y. Dec. 11, 2006) (reducing request for hourly rate of $230 to $200 for senior paralegal where no background information was provided), report and recommendation adopted sub nom., Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag AG, 2007 WL 656274 (Feb. 23, 2007).

As to the $225 hourly rate sought for the "patent clerk," plaintiff again provides no information concerning this individual's background and experience which might assist the Court in assessing the reasonableness of the hourly rate sought. Plaintiff also fails to describe what, exactly, a "patent clerk"

is responsible for, or whether this individual is more akin to a paralegal. The Court has been unable to locate any award of an hourly rate to a "patent clerk" in this District. A review of the Time and Expense Details report submitted by plaintiff indicates that the patent clerk billed a total of 5.5 hours to prepare the exhibits to the Complaint. See Doc. #46-3, Panza Decl. at Ex. 1, Time and Expense Details report. Because the patent clerk billed only for the administrative task of preparing exhibits to the Complaint,[10] the Court recommends that the patent clerk's hourly rate be reduced to $150 per hour, to be commensurate with the hourly rates typically awarded for the work of paralegals in this District. See, e.g., A. v. Hartford Bd. of Educ., No. 3:11CV01381(GWC), 2017 WL 187138, at *7 (D. Conn. Jan. 17, 2017) (awarding $140 per hour for paralegal work); Crawford, 2015 WL 1125491, at *6 (same); Bank of N.Y. Mellon v. Bell, No. 3:11CV1255(JAM), 2015 WL 778668, at *2 (D. Conn. Feb. 24, 2015) (awarding $150 per hour for paralegal work).

### 2. *Hours Reasonably Expended*

The Court next turns to the reasonableness of the hours billed in connection with this litigation. In determining the

---

[10] "[P]reparing exhibits ... is a task that normally would have been performed by a paralegal[.]" G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 439 (S.D.N.Y. 2012).

reasonableness of the hours sought, the Court is guided by the following principles:

> "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." <u>Hensley</u>, 461 U.S. at 437. "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." <u>Kirsch</u>, 148 F.3d at 173. The Court should exclude from the fee calculation hours that were not reasonably expended. <u>Hensley</u>, 461 U.S. at 434. Hours that are "excessive, redundant, or otherwise unnecessary should be excluded and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application, from the lodestar calculation." <u>Kirsch</u>, 148 F.3d at 173 (internal citations and quotation marks omitted).

<u>Blumenschine v. Prof'l Media Grp., LLC</u>, No. 3:02CV2244(HBF), 2007 WL 988192, at *14 (D. Conn. Mar. 30, 2007). Here, plaintiff has established its entitlement to an award of reasonable attorney's fees and has supported its application with contemporaneous time records and the declaration of the bookkeeper for the law firm of Delio, Peterson & Curcio, LLC. Upon careful review, the Court finds that the hours billed are reasonable. However, as stated above, the Court recommends that the total billed attorney time, amounting to $37,325.00,[11] be reduced by 10% to account for the inadequacies in the

---

[11] $38,562.50 (total fees sought), less $1,237.50 incurred for 5.5 hours billed by the "patent clerk" at $225 per hour.

documentation regarding reasonableness of the hourly attorney rates requested.

Accordingly, the Court recommends that 5.5 hours at the rate of $150 per hour be awarded for **patent clerk time**, for a total award of **$825**.

The Court further recommends that the total attorney time sought, 124.70 hours,[12] be awarded at the requested attorney billing rates, amounting to $37,325, but that this total be reduced by 10% for an award of **$33,592.50 in attorney time**.

Therefore, the Court recommends that a **total of $34,417.50 in fees** be awarded to plaintiff.

### C. Costs

Plaintiff seeks costs in the amount of $1,812.52. See Doc. #46 at 8-9; see also Doc. #46-3, Panza Decl. at ¶7. "Title 35 explicitly authorizes the award of 'costs as fixed by the court.'" IPVX Patent Holdings, 2014 WL 4437294, at *6 (citing 35 U.S.C. §284). Plaintiff's requested costs are comprised of a $400 filing fee, $1,347.19 for costs related to service of process, and "delivery costs" of $65.33. See Doc. #46 at 8-9. Plaintiff's request for these costs are supported by the declaration of plaintiff's bookkeeper, Sheila Panza, and a Time

---

[12] See Doc. #46-3, Panza Decl. at Ex. 1, Time and Expense Details report. The Court further notes that 13.5 hours of attorney time were charged at $0. See id.

and Expense Details report. See generally Doc. #46-3, Panza
Decl.

The Court finds that plaintiff's request for reimbursement
of the $400 filing fee and $65.33 delivery costs is reasonable.
However, as to plaintiff's costs related to service of process,
the Court recommends that only $1,317.19 be awarded. Plaintiff
represents that "even after receiving two Cease and Desist
letters, Defendant was evasive in service of process, requiring
Plaintiff to hire an investigator[.]" Doc. #46 at 8. The Time
and Expense Details report reflects that: $1,310 was incurred as
an "Associate Fee – E120 – Service of Process and Investigations
Phase of Civil Process in Texas;" $7.19 was incurred for a
document legalization fee with the Texas Secretary of State; and
another $30.00 was incurred as an "Associate Fee – Legal
Research." See Doc. #46-3, Panza Decl. at 6. The Court finds the
$7.19 cost for the document legalization fee is reasonable. The
$1,310 cost for the private investigator is also reasonable in
light of plaintiff's representations that defendants evaded
service of process, thus necessitating the involvement of a
private investigator to establish defendants' whereabouts. See
Lora v. J.V. Car Wash, LTC., No. 11CV9010(LLS)(AJP), 2015 WL
4496847, at *16 (S.D.N.Y. July 24, 2015) (granting plaintiff's
request for private investigator costs when plaintiff provided a
credible explanation for the need for background checks on

defendants and "to assess the seriousness of defendants' bankruptcy threats"), report and recommendation adopted sub nom., Lora v. J.V. Car Wash, Ltd., 2015 WL 7302755 (Nov. 18, 2015). It is unclear, however, what the $30.00 "Associate Fee – Legal Research" relates to, or what that research entailed. Accordingly, the Court recommends that $30.00 be subtracted from plaintiff's requests for costs, and that plaintiff be awarded **$1,782.52 in its reasonable costs.**

## III. **Conclusion**

Accordingly, for the reasons stated, the Court recommends that plaintiff be awarded **$34,417.50 in attorney's fees, and $1,782.52 in costs**, for a total award of **$36,200.02.**

This is a recommended ruling. See Fed. R. Civ. P. 72(b)(1). **Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order.** See Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen (14) days will preclude appellate review. See 28 U.S.C. §636(b)(1); Rules 72, 6(a) and 6(d) of the Federal Rules of Civil Procedure; D. Conn. L. Civ. R. 72.2; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED at New Haven, Connecticut this 28th day of June, 2017.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE